Slip Op. 12-52

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED SYNTHETICS, INCORPORATED, | |
| Plaintiff, | |
| v. | Before: Gregory W. Carman, Judge |
| | Timothy C. Stanceu, Judge |
| | Leo M. Gordon, Judge |
| UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR (ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION, AND DEANNA T. OKUN (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION), | Court No. 08-00139 |
| Defendants. | |

**OPINION**

[Dismissing all claims for failure to state a claim upon which relief can be granted; dismissing the action.]

Dated: April 20, 2012

    <u>Gregory S. Menegaz</u> and <u>J. Kevin Horgan</u>, deKieffer & Horgan, of Washington, DC for Plaintiff United Synthetics, Incorporated.

    <u>Jessica R. Toplin</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendants United States, U.S. Customs and Border Protection, and David V. Aguilar, Acting Commissioner of U.S. Customs and Border Protection. With her on the briefs were <u>Tony West</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Franklin E. White, Jr.</u>, Assistant Director, and David S. Silverbrand and Courtney S. McNamara, Trial Attorneys. Of counsel on the briefs were <u>Andrew G. Jones</u> and <u>Joseph Barbato</u>, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

     Patrick V. Gallagher, Jr., Attorney Advisor, Office of General Counsel, U.S. International Trade Commission, of Washington, DC for Defendants U.S. International Trade Commission and Deanna T. Okun, Chairman, U.S. International Trade Commission.  With him on the briefs were James M. Lyons, General Counsel and Neal J. Reynolds, Assistant General Counsel.

     Gordon, Judge:  This case arose from the actions of two agencies, the U.S. International Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs" or "CBP"), that denied Plaintiff United Synthetics, Incorporated ("USI") certain monetary benefits under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), 19 U.S.C. § 1675c (2000), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  The ITC did not include Plaintiff on its list of parties potentially eligible for "affected domestic producer" ("ADP") status, which would have qualified USI for distributions of antidumping duties collected under antidumping orders on imports of certain polyester staple fiber ("PSF") from Korea and Taiwan.  Certain Polyester Staple Fiber from Korea and Taiwan, Inv. No. 731-TA-825-826 (Final), USITC Pub. 3300 (May 2000) ("Final Injury Determination"); Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Polyester Staple Fiber From the Republic of Korea and Antidumping Duty Orders: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan, 65 Fed. Reg. 33,807 (Dep't of Commerce May 25, 2000) ("Final LTFV Determination and Antidumping Duty Orders").  Because Plaintiff was not on the ITC's list of potential ADPs, Customs made no CDSOA distributions to USI.

Plaintiff claims that Defendants' actions are inconsistent with the CDSOA, not supported by substantial evidence, and otherwise not in accordance with law.  Plaintiff also brings facial and as-applied constitutional challenges to the CDSOA under the First Amendment and under the equal protection and due process guarantees of the Fifth Amendment.

Before the court are motions under USCIT Rule 12(b)(5) to dismiss for failure to state a claim upon which relief can be granted filed by the ITC (Def. U.S. Int'l Trade Comm'n's Mem. in Supp. of Its Mot. to Dismiss for Failure to State a Claim, ECF No. 44 ("ITC's Mot.")) and Customs (Defs. the United States and U.S. Customs and Border Protection's Mem. in Support of Their Mot. to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted, ECF No. 47 ("Customs' Mot.")).   The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2006). See Furniture Brands Int'l, Inc. v. United States, 35 CIT __, __, 807 F. Supp. 2d 1301, 1307-10 (2011).  For the reasons set forth below, we conclude that Plaintiff has failed to state a claim upon which relief can be granted.  The court will grant Defendants' USCIT Rule 12(b)(5) motions and dismiss this action.

## I. Background

Following a 1999 petition filed by a group of domestic manufacturers, the U.S. Department of Commerce ("Commerce") initiated an antidumping investigation of PSF from Korea and Taiwan.  Initiation of Antidumping Duty Investigations: Certain Polyester Staple Fiber From the Republic of Korea and Taiwan, 64 Fed. Reg. 23,053 (Dep't of Commerce Apr. 29, 1999); Am. Compl. ¶ 22, ECF No. 17.  Contemporaneously, the ITC

conducted an injury investigation.   Certain Polyester Staple Fibers from Korea and Taiwan, 64 Fed. Reg. 17,414 (ITC Apr. 9, 1999); Am. Compl. ¶ 22.

Following an affirmative injury determination by the ITC in May 2000, Commerce, on May 25, 2000, published its amended final determinations of sales at less than fair value and issued the antidumping duty orders covering the subject merchandise.   Final LTFV Determination and Antidumping Duty Orders, 65 Fed. Reg. 33,807; Am. Compl. ¶ 26.  The antidumping duty orders remain in effect.  Am. Compl. ¶ 26.  Plaintiff alleges that "USI did not exist at the time that the petition was filed or during the original investigation," and that "USI was incorporated September 1, 1999 and began operations as a U.S. manufacturer of subject polyester staple fiber May 30, 2000," five days after publication of the antidumping duty orders.  Id. ¶ 23.

Plaintiff commenced this action on April 18, 2008, contesting the denial of CDSOA distributions to Plaintiff for Fiscal Years 2006 and 2007.  Compl., ECF No. 4.  Shortly thereafter, the court stayed this action pending a final resolution of other litigation raising the same or similar issues. Order, May 28, 2008, ECF No. 12 (action stayed "until final resolution of Pat Huval Restaurant & Oyster Bar, Inc. v. United States, Consol. Ct. No. 06-0290, that is, when all appeals have been exhausted.").

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in SKF USA Inc. v. United States, 556 F.3d 1337 (2009), cert. denied, 130 S. Ct. 3273 (2010) ("SKF II"), which addressed questions also present in this action, the court issued an order directing Plaintiff to show cause why this action should not be dismissed.  Order to Show Cause, Jan. 3, 2011, ECF No. 16.  On February 1, 2011,

Plaintiff filed its Amended Complaint.[1]  Am. Compl.  After receiving Plaintiff's response to the Order to Show Cause, the court lifted the stay on this action for all purposes. Order Lifting Stay, Feb. 9, 2011, ECF No. 20.  Defendants filed motions to dismiss for failure to state a claim upon which relief can be granted on May 2, 2011 (ITC's Mot.) and May 6, 2011 (Customs' Mot.).

## II. Standard of Review

In deciding a USCIT Rule 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations to be true and draws all reasonable inferences in plaintiff's favor. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 & n.13 (Fed. Cir. 1993).

A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and footnote omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is

---

[1] The filing of the amendment as a matter of course was untimely under Rule 15(a). USCIT R. 15(a) ("[A] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.").  The amendments would not have been untimely under Rule 15(a) as in effect prior to January 1, 2011, which rule allowed a party to amend its pleading once as a matter of course before being served with a responsive pleading.  Because the other parties to this action have addressed in their Rule 12(b)(5) motions the complaint in amended form, the court exercises its discretion under USCIT Rule 89 to accept Plaintiffs' First Amended Complaint.  USCIT R. 89 ("These rules and any amendments take effect at the time specified by the court.  They govern . . . proceedings after that date in a case then pending unless: (A) the court specifies otherwise . . . .").

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## III. Discussion

In 2000, Congress amended the Tariff Act of 1930 to add section 754, the CDSOA, which provides distributions of assessed antidumping and countervailing duties to ADPs on a fiscal year basis. 19 U.S.C. § 1675c(d)(1).[2] To be an ADP, a party must meet several criteria, including the requirement that it have been a petitioner, or an interested party in support of a petition with respect to which an antidumping duty or countervailing duty order was entered. Id. § 1675c(b)(1) ("petition support requirement"). The CDSOA directed the ITC to forward to Customs, within sixty days of the issuance of an antidumping or countervailing duty order, lists of persons potentially eligible for ADP status, i.e., "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response." Id. § 1675c(d)(1). The CDSOA further directed that:

> [i]n those cases in which a determination of injury was not required or the Commission's records do not permit an identification of those in support of a petition, the Commission shall consult with the administering authority [Commerce] to determine the identity of the petitioner and those domestic parties who have entered appearances

---

[2] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

> during administrative reviews conducted by the administering authority under section 1675 of this title.

19 U.S.C. § 1675c(d)(1) ("consultation provision"). Customs then publishes the lists of potential ADPs in the Federal Register annually, prior to each distribution. Id. § 1675c(d)(2). Customs distributes assessed duties to parties on the list of potential ADPs that certify that they met the remaining eligibility criteria. Id. § 1675c(d)(2).

The ITC compiled lists of potential ADPs with respect to the antidumping duty orders on PSF and provided those lists to Customs. Am. Compl. ¶ 33. Customs published the lists of potential ADPs for Fiscal Year 2006 on June 1, 2006, id., and for Fiscal Year 2007 on May 29, 2007, id. ¶ 34. Plaintiff did not appear on either list. Id. ¶¶ 33-34. Nevertheless, Plaintiff certified to Customs its eligibility for both fiscal years. Id. ¶ 35. Customs responded by indicating that USI was allocated CDSOA funds for Fiscal Year 2007 on the subject antidumping duty orders but that the disbursement of those funds was being withheld pending the disposition of pending litigation over the Byrd Amendment. Id. ¶¶ 18, 37. Plaintiff also sought certification from the Commission based on the decisions in PS Chez Sidney v. International Trade Commission, 30 CIT 858, 442 F. Supp. 2d 1329 (2006) and SKF USA Inc. v. United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006) ("SKF I").[3] Am. Compl. ¶¶ 19, 36. Stating that Plaintiff "did not qualify as an ADP because it did not support the original petitions," the ITC denied USI's request for certification. Id. ¶ 38.

---

[3] PS Chez Sidney held the petition support requirement unconstitutional on First Amendment freedom of expression grounds, and SKF I held the petition support requirement unconstitutional on Fifth Amendment equal protection grounds.

Plaintiff challenges the validity and constitutionality of the Commission's and CBP's application of the CDSOA to USI. In Count 1 of its Amended Complaint, Plaintiff claims that the ITC's determination not to include USI on the list of potential ADPs was inconsistent with the CDSOA, not supported by substantial evidence, and otherwise not in accordance with the law. Am. Compl. ¶ 41. In Counts 2 and 3, Plaintiff challenges on First Amendment grounds the CDSOA's petition support requirement, both facially and as applied to USI. Id. ¶¶ 43-44, 46-48. In Counts 4 and 5, Plaintiff challenges the petition support requirement, both facially and as applied to USI, on Fifth Amendment equal protection grounds. Id. ¶¶ 50-51, 53-54. In Count 6, Plaintiff challenges the petition support requirement as impermissibly retroactive in violation of the Fifth Amendment Due Process Clause because Defendants based eligibility for ADP status, and thus eligibility for disbursements, on past conduct. Id. ¶ 56.

## A. Plaintiff's Statutory Challenges to the Actions of the Two Agencies Must Be Dismissed

In Count 1 of the Amended Complaint, Plaintiff challenges on statutory grounds the actions of the ITC and Customs denying it CDSOA distributions for Fiscal Years 2006 and 2007. Plaintiff challenges as unlawful under the CDSOA the ITC's determination not to place USI on the list of potential ADPs and the failure of Customs to provide USI distributions. Am. Compl. ¶ 41. Plaintiff claims that these agency actions "were inconsistent with the CDSOA, not supported by substantial evidence, and were otherwise not in accordance with law." Id.

Plaintiff states that the ITC "has never included USI in its list of eligible ADPs." Id. ¶ 28. However, we do not find within the complaint alleged facts that would have

qualified Plaintiff for inclusion on the ITC's list.  According to the CDSOA, a domestic

producer may qualify as an ADP only if it "was a petitioner or interested party in support

of the petition with respect to which an antidumping duty order . . . has been entered."

19 U.S.C. § 1675c(b)(1).   The ITC is directed to prepare "a list of petitioners and

persons with respect to each order and finding and a list of persons that indicate

support of the petition by letter or through questionnaire response."   19 U.S.C.

§ 1675c(d)(1).  The Amended Complaint states that Plaintiff was not a petitioner with

respect to the petition resulting in the antidumping duty orders on PSF from Korea and

Taiwan, Am. Compl. ¶ 23, and fails to allege facts according to which we could

conclude that USI obtained ADP status as a party who was in support of that petition.

    The Amended Complaint alleges that "USI completed the Commission's initial

U.S. producer questionnaire and multiple supplemental questionnaires" in the five-year

review ("Sunset Review") of the antidumping duty orders that the Commission instituted

on March 31, 2005.  Am. Compl. ¶ 32.  The Amended Complaint further alleges that

"USI was certified as an ADP under the 2007 antidumping duty order covering PSF from

China and has received CDSOA disbursements from that order hence."  Id. ¶ 39.  With

respect to the orders on PSF from Korea and Taiwan, Plaintiff argues that, in denying it

ADP status, "the Commission failed to consider USI's participation in a Sunset Review

under 19 U.S.C. § 1675(c) (2005) as a basis for determining [USI's] support for the

petition."  USI's Mem. in Opp'n to Mot. of U.S. Int'l Trade Comm'n to Dismiss for Failure

to State a Claim at 6, ECF No. 50  ("Pl.'s Opp'n to ITC's Mot.").  According to USI, "[t]he

Commission's interpretation of the CDSOA in this regard is plainly at odds with the

language of the statute and its underlying purpose."  Id. at 7.  Plaintiff argues that the

consultation provision requires the Commission, in certain circumstances, to consult with Commerce on the identity of parties in support of the petition. Id. (citing 19 U.S.C. § 1675c(d)(1)).   According to USI, the reference in the consultation provision to administrative reviews signifies congressional intent that the Commission must consider evidence of support for the petition found in the record of those reviews, including sunset reviews.  In effect, Plaintiff posits that a domestic producer such as USI, who was not presented with a questionnaire during the ITC's injury investigation, still may satisfy the CDSOA's definition of "affected domestic producer" by entering an appearance in a sunset review and expressing support for the continued existence of the order.   Thus, Plaintiff would have us construe the CDSOA to mean that an interested party's expression of support for an existing antidumping duty order, at least in the circumstance presented by this case, is the equivalent of expressing support for the petition.

      We are unable to accept Plaintiff's proffered construction.   In drafting the CDSOA, Congress was explicit in requiring support for the petition rather than support for a resulting order.  Under the antidumping statute, a petition is filed on behalf of a U.S. industry seeking initiation of an investigation to determine whether an antidumping duty should be imposed on imports of a class or kind of merchandise that is alleged to be, or be likely to be, sold at less than fair value.  19 U.S.C. §§ 1673, 1673a(b).  A petition that ultimately is successful results typically in the issuance of an antidumping duty order.[4]  19 U.S.C. § 1673d(c)(2).  A periodic administrative review or sunset review

---

[4] In certain cases, a petition may result in other forms of relief from unfairly traded imports.  See 19 U.S.C. § 1673c (providing for suspension agreements).

conducted under section 1675 may be described generally as a proceeding conducted upon an antidumping duty order rather than a proceeding conducted upon the original petition.  See 19 U.S.C. § 1675(a), (c).  Thus, a construction of the CDSOA that equates support for an order, as expressed during a review, with support for a petition, as expressed during the investigation conducted upon that petition, is at odds with the plain meaning of section 1675c(b)(1) when read in the larger context of the antidumping statute.  Moreover, Plaintiff's construction of the term "interested party in support of the petition," as used in section 1675c(b)(1), would have the effect of broadening considerably the class of domestic producers eligible for CDSOA distributions beyond the plain meaning of that term.  Had Congress intended to provide CDSOA distributions to parties who supported the continued existence of antidumping duty orders in sunset reviews, or to parties who otherwise participated as domestic producers in administrative reviews in ways that supported positions favorable to the domestic industry, it would not have conditioned ADP status on an expression of support for the petition.

Plaintiff argues that support for its construction of the statute is found in the legislative findings of the CDSOA.  Plaintiff points to the specific findings that demonstrate that "creating jobs and promoting investment in affected domestic industries are among the primary purposes of the antidumping law and in particular the CDSOA."  Pl.'s Opp'n to ITC's Mot. at 8 (citing Pub. L. 106-387, § 1(a) [Title X, § 1002], Oct. 28, 2000, 114 Stat. 1549, 1549A–72).  Plaintiff maintains that

> [t]he fact that the record of the Commission's original
> investigation may not contain evidence of USI's support for
> the petition against Korea and Taiwan should not preclude a

> finding that USI is an ADP with respect to the AD [antidumping] order on PSF from Korea and Taiwan, particularly where the statutory language explicitly provides that post-order review proceedings are relevant to the determination of ADPs who are eligible for CDSOA distributions.

Id. at 8-9.  The legislative findings cited by Plaintiff, however, speak only in general terms.  We do not discern in these findings a specific intent to provide distributions to domestic interested parties who were not petitioners and who did not express support for a petition during an investigation.

Plaintiff maintains, further, that the Commission's interpretation of the CDSOA would render the consultation provision meaningless and thereby violate the canon of construction requiring that effect be given to all provisions in the statute.  Pl.'s Opp'n to ITC's Mot at 7.  We disagree.  The consultation provision appears in the statute immediately following a sentence directing that "the Commission shall forward to the Commissioner [of Customs] . . . within 60 days after the date an antidumping or countervailing duty order or finding is issued, a list of petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1).  Under Plaintiff's construction, the two sentences, when read together and applied to the facts of this case, compelled a finding that the Commission's records, which may have permitted an identification of some of those domestic interested parties who actually were in support of the petition that sought the imposition of antidumping duties on imports of PSF from Korea and Taiwan, were insufficient to determine all such supporters.  Acceptance of Plaintiff's argument would result in our holding that the ITC

was required to consult with Commerce to identify domestic producers, such as USI, who entered appearances in administrative reviews associated with that petition. Positing that "USI might have participated in the original investigation by responding to a questionnaire from the Commission if USI had received one," Plaintiff argues that "the fact that USI was not asked to respond to a Commission questionnaire should not be used as the basis for denying it eligibility for CDSOA distributions."  Pl.'s Opp'n to ITC's Mot. at 9.

The flaw in Plaintiff's argument is that the ITC's construction of the CDSOA did not render meaningless or superfluous the consultation provision.  To the contrary, the provision could have application in situations other than the one presented by this case. For example, a party who expressed support for a petition during the ITC's injury investigation might not be identifiable from the Commission's records if it subsequently underwent a change in name.  The fact of the name change might well be known to Commerce as a result of section 1675 reviews in which the party entered one or more appearances.

In summary, the Amended Complaint fails to allege facts from which we could conclude that the ITC erred in omitting USI from any list prepared under 19 U.S.C. § 1675c(d)(1).  For this reason, we also must dismiss the statutory claims Plaintiff brings against Customs.  We do not find within the Amended Complaint facts by which we could conclude that Customs lawfully could have made distributions to Plaintiff.  See 19 U.S.C. § 1675c(d)(2) (requiring Customs to base its "list of affected domestic producers potentially eligible for the distribution based on the list obtained from the

Commission under paragraph (1)").  We conclude, therefore, that the claims in Count 1 must be dismissed for failure to state a claim upon which relief can be granted.[5]

### B.  Plaintiff's Constitutional Challenges Must be Dismissed

In Counts 2, 3, 4, and 5, Plaintiff brings facial and as-applied challenges to the petition support requirement of the CDSOA under the First Amendment and the Fifth Amendment equal protection guarantee. Am. Compl. ¶¶ 42-54.  In Count 6, Plaintiff challenges the petition support requirement as impermissibly retroactive under the Fifth Amendment due process guarantee.  Id. ¶ 56.  We conclude that the First Amendment and equal protection claims must be dismissed as foreclosed by binding precedent. The retroactivity claim must be dismissed for failure to state a claim on which relief can be granted.

### 1. Plaintiff's First Amendment and Equal Protection Facial Challenges to the Petition Support Requirement Are Foreclosed by Binding Precedent

In Count 3, Plaintiff claims that the petition support requirement of the CDSOA violates the First Amendment on its face because it compels speech.  Id. ¶ 48.  Plaintiff further claims that the CDSOA engages in impermissible viewpoint discrimination by conditioning receipt of a government benefit on a private speaker's expressing a specific viewpoint, i.e., expression of support for an antidumping duty petition, and, therefore, is an unconstitutional restriction on speech.  Id. ¶ 47.

In Count 5, Plaintiff claims that the petition support requirement facially violates the equal protection guarantee of the Fifth Amendment.  Id. ¶ 53.  Plaintiff contends that

---

[5] Because Plaintiff's statutory claim is dismissed for failure to state a claim on which relief can be granted, the court will deny as moot Plaintiff's motion to complete the administrative record (ECF No. 40).

the CDSOA creates a classification infringing on USI's fundamental right to free speech that is a denial of equal protection because it is not narrowly tailored to a compelling government objective.   Id.   Plaintiff further claims that the CDSOA impermissibly discriminates between USI and other domestic producers who expressed support for the petition.   Id. ¶ 54.   Lastly, in Count 5, in what apparently is a restatement of the claims in Count 1, Plaintiff asserts that "[i]f not facially invalid, then Defendants' application of the law to distinguish USI as not supporting the enforcement of the antidumping laws is not supported by substantial evidence."   Id.

The Court of Appeals rejected analogous claims challenging the petition support requirement in SKF II, in which it upheld the petition support requirement under the First Amendment and under the Fifth Amendment's equal protection guarantee. SKF II, 556 F.3d at 1360 (the "Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing trade laws, and is not overly broad."); id. at 1360 n.38 ("For the same reason, the Byrd Amendment does not fail the equal protection review applicable to statutes that disadvantage protected speech."); id. at 1360 ("Because it serves a substantial government interest, the Byrd Amendment is also clearly not violative of equal protection under the rational basis standard.").   Plaintiff's facial constitutional challenges to the CDSOA are indistinguishable from those claims rejected by the Court of Appeals in SKF II and, therefore, are foreclosed by the holding in SKF II.  Accordingly, those challenges must be dismissed for failure to state a claim on which relief can be granted.

Plaintiff argues that SKF II is no longer good law because the decision of the Court of Appeals in SKF II to uphold the petition support requirement using an

intermediate level of scrutiny, the "Central Hudson" test, was implicitly overturned by the

U.S. Supreme Court in Snyder v. Phelps, 131 S. Ct. 1207 (2011).  Pl.'s Opp'n to ITC's

Mot. at 14-15 (citing Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,

447 U.S. 557, 564 (1980)).  Plaintiff construes Snyder to hold that all speech on matters

of public concern is "entitled to maximum First Amendment protection" and views

responses to the ITC's questionnaires as speech on a matter of public concern.  Id.

Snyder, however, does not support a conclusion that SKF II incorrectly applied only an

intermediate level of First Amendment scrutiny.  Snyder set aside as contrary to the

First Amendment a jury verdict imposing substantial state law tort liability on persons

who picketed at a military funeral.  Snyder, 131 S. Ct. at 1220.  The case does not hold

that all speech addressing matters of public concern, such as a position taken in

antidumping duty litigation, must receive a level of judicial scrutiny higher than that

applied in SKF II.  See Standard Furniture Mfg. Co. v. United States, 36 CIT ___, ___,

Slip. Op. 12-21, at 16-17 (2012) (finding that Snyder did not compel a First Amendment

analysis differing from that which was applied in SKF II).

## 2. Plaintiff's First Amendment As-Applied Challenge Must be Dismissed

Plaintiff also asserts, in Count 2, an as-applied constitutional challenge under the

First Amendment, claiming specifically that the CDSOA unconstitutionally restricts

speech by discriminating against those, such as USI, who did not express a specific

viewpoint, i.e., support for the antidumping petition.  Am. Compl. ¶¶ 43-44.  Plaintiff

views the holding in SKF II that the petition support requirement did not violate the First

Amendment as confined to situations in which parties actively opposed the petition and

as signifying that the ITC may consider only a party's actions, and not a party's expressed viewpoints, in determining whether a party supported the petition.   Pl.'s Opp'n to ITC's Mot. at 10, 13-14.   USI maintains that it satisfied the participation requirement of <u>SKF II</u> through its actions, <u>i.e.</u>, its completion of the ITC's initial domestic producer questionnaire and multiple supplemental questionnaires in the Sunset Reviews.   <u>Id.</u> at 11.   Plaintiff argues that the ITC's application of the CDSOA, therefore, violated the First Amendment to the extent the ITC based its disqualification of USI as a potential ADP on USI's failure to indicate support of the petition by questionnaire response.   <u>Id.</u>

Plaintiff's argument misinterprets <u>SKF II</u>, which does not hold that the CDSOA would violate the First Amendment if applied to deny CDSOA benefits based solely on a party's failing to indicate support for the petition by letter or questionnaire response. <u>SKF II</u> holds the opposite.   The Court of Appeals determined that the appropriate First Amendment legal standard was the standard applying to regulation of commercial speech.   It then concluded that the CDSOA, which requires a non-petitioner such as SKF USA, Inc. to express support for the petition in order to acquire ADP status, met that standard. <u>SKF II</u>, 556 F.3d at 1359-60.   The Court of Appeals did state, as Plaintiff highlights, that "[t]he language of the Byrd Amendment is easily susceptible to a construction that rewards actions (litigation support) rather than the expression of particular views" and that "a limiting construction of the statute is necessary to cabin its scope so that it does not reward a mere abstract expression of support."   <u>Id.</u> at 1353; Pl.'s Opp'n to ITC's Mot. at 10.   However, those statements were in the context of a discussion of statutory language as an alternative to a previous discussion in the

opinion addressing the question of congressional purpose.   They were part of the analysis by which the Court of Appeals subjected the CDSOA to First Amendment standards for the regulation of commercial speech.   They do not signify a holding that the First Amendment prohibits a government agency implementing the CDSOA from conditioning ADP status on the expression of support for a petition.   See Furniture Brands, 35 CIT at __, 807 F. Supp. 2d at 1311-12 (rejecting the argument that SKF II adopted a limiting construction of the CDSOA that modified the petition support requirement).

Plaintiff also argues that, on these facts, Defendants applied the petition support requirement in a way that was overbroad, thereby violating the First Amendment according to the test applied by the Court of Appeals in SKF II, the Central Hudson test. Pl.'s Opp'n to ITC's Mot. at 12-13 (citing SKF, 556 F.3d at 1357).   Positing SKF II to hold that "domestic producers who are not petitioners but nevertheless respond to Commission questionnaires have done enough to be regarded as supporting the petition," Plaintiff argues that denying it CDSOA distributions served no governmental interest.   Id. at 13.   This argument is misguided.   The Court of Appeals concluded in SKF II that the CDSOA's providing benefits only to those who supported the petition, and not to those who opposed or took no position on the petition, served a substantial governmental interest, directly advanced that interest, and was not more extensive than necessary in advancing that interest.   SKF II, 556 F.3d at 1355-59.

For the aforementioned reasons, we conclude that Plaintiff's First Amendment as-applied challenge is foreclosed by the holding in SKF II.   The claims stated in Count 2 of the complaint, therefore, must be dismissed.

### 3.  Plaintiff's Fifth Amendment
### Equal Protection As-Applied Challenge Must Be Dismissed

In Count 4, Plaintiff claims that the CDSOA impermissibly discriminates between Plaintiff and other domestic producers who expressed support for the underlying antidumping duty petition in that the petition support requirement, as applied to USI, was not narrowly tailored to a compelling government objective, and thereby contravened the equal protection guarantee of the Fifth Amendment.  Am. Compl. ¶ 51; see also Pl.'s Opp'n to ITC's Mot. at 16.

Plaintiff has alleged no facts that distinguish its equal protection claim from the equal protection claim addressed and rejected in SKF II.  The Court of Appeals held that the petition support requirement of the CDSOA does not violate the equal protection guarantee, holding that the petition support requirement is rationally related to the government's legitimate purpose of rewarding parties who promote the government's policy against dumping.  SKF II, 556 F.3d at 1360.  SKF II reasoned that it was "rational for Congress to conclude that those who did not support the petition should not be rewarded."  Id. at 1359.  For these reasons, relief cannot be granted on Plaintiff's as-applied equal protection claims, which must be dismissed.

### 4.  Plaintiff's Retroactivity Claims Must Be Dismissed

Plaintiff claims in Count 6 that the petition support requirement is impermissibly retroactive in violation of the Fifth Amendment due process guarantee because Defendants based eligibility for ADP status, and thus eligibility for disbursements, on past conduct.  Am. Compl. ¶ 56.  The Amended Complaint states that "[t]he Due Process clause disfavors retroactive legislation, i.e., imposition of a requirement that

USI could not have met because it was not yet operating during the original investigation, and Defendants' disbursements only to those companies that express support for a petition are not rationally related to a legitimate governmental purpose." Id.[6]

The petition support requirement was applied retroactively to USI, the antidumping duty orders on PSF from Korea and Taiwan having been published on May 25, 2000. Final LTFV Determination and Antidumping Duty Orders, 65 Fed. Reg. 33,807. Publication of the orders thus occurred prior to October 28, 2000, the effective date of the CDSOA. 19 U.S.C. § 1675c. Only by having expressed support for the petition that resulted in a pre-enactment antidumping duty order may a domestic producer qualify as an ADP to receive distributions of duties assessed under such an order. Id. § 1675c(d)(1).

In New Hampshire Ball Bearing, Inc. v. United States, 36 CIT ___, 815 F. Supp. 2d 1301 (2012), we rejected a claim challenging on due process grounds the retroactive reach Congress attached to the petition support requirement. The plaintiff in New Hampshire Ball Bearing had made a decision, long before enactment of the CDSOA, not to express to the ITC support for an antidumping duty petition. 36 CIT at ___, 815 F. Supp. 2d at 1307. Due to the retroactive reach Congress applied to the petition support requirement, the plaintiff in that case could not have known the adverse consequence that Congress, nearly twelve years later, would attach to its decision.

___

[6] The court notes that Plaintiff states that it "does not oppose dismissal of Count 6 of its complaint which relates to a possible violation of the Due Process Clause of the Constitution based on the retroactive nature of the CDSOA." Pl.'s Opp'n to ITC's Mot. at 16.

Although we recognized that the CDSOA, in its retroactive petition support provision, "adjusts 'rights and burdens' of 'economic life' and 'upsets otherwise settled expectations,'" 36 CIT at ___, 815 F. Supp. 2d at 1308 (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15-16 (1976)), we nevertheless concluded that Congress did not act arbitrarily and irrationally in attaching a retroactive reach to the petition support requirement. 36 CIT at ___, 815 F. Supp. 2d at 1309. We concluded instead that the "'retroactive application of the legislation is itself justified by a rational legislative purpose'" and, therefore, permissible on due process grounds. 36 CIT at ___, 815 F. Supp. 2d at 1309 (quoting Pension Benefit Guaranty Corp. v. R.A. Gray Co., 467 U.S. 717, 729 (1984)). We reasoned that "[i]t was not arbitrary or irrational for Congress to conclude that the legislative purpose of rewarding domestic producers who supported antidumping petitions . . . would be 'more fully effectuated' if the petition support requirement were applied both prospectively and retroactively. 36 CIT at ___, 815 F. Supp. 2d at 1309 (quoting Pension Benefit, 467 U.S. at 730-31). By applying the petition support requirement retroactively, Congress expanded the group of rewarded domestic producers to include those who expressed support for petitions in antidumping duty investigations completed prior to enactment of the CDSOA. In this way, Congress furthered the purpose of remedying unfairly traded imports. 36 CIT at ___, 815 F. Supp. 2d at 1309.

USI grounds its due process retroactivity claim in alleged facts differing from those in New Hampshire Ball Bearing. Unlike the plaintiff in that case, USI asserts that it had no opportunity to express support for the petition seeking the imposition of antidumping duties on imports of PSF from Korea and Taiwan, having begun operations

as a U.S. manufacturer of the subject PSF on May 30, 2000, five days after the publication of the antidumping duty orders, and having received no ITC questionnaires during the injury investigation.  Am. Compl. ¶¶ 23, 56.  Presuming this allegation to be true, we nevertheless conclude that USI's retroactivity claim lacks merit.

Congress chose in the CDSOA to make disbursements potentially available to domestic producers who expressed support for petitions that, as of the effective date of the statute, already had ripened into antidumping duty orders.  19 U.S.C. § 1675c(d)(1) (requiring the ITC to forward its list to Customs "within 60 days after the effective date of this section in the case of orders . . . in effect on January 1, 1999, or thereafter . . .").  As discussed above, and as we concluded in New Hampshire Ball Bearing, Congress did so to fulfill a rational legislative purpose.  New Hampshire Ball Bearing, 36 CIT at ___, 815 F. Supp. 2d at 1308.  That purpose does not depend on the reason why a given domestic producer did not express support for a petition: under the CDSOA's benefit scheme (as applied either retroactively or prospectively), it makes no difference whether a producer chose not to express its support to the ITC or, having yet to acquire interested party status, had no opportunity to respond.  As we recognized in New Hampshire Ball Bearing, it is understandable that domestic producers who had the opportunity to support a petition but declined to do so prior to enactment, such as the plaintiff in New Hampshire Ball Bearing, would object to the retroactive reach of the support provision.  36 CIT at ___, 815 F. Supp. 2d at 1309.  Those producers lacked notice of the consequence Congress later would attach to their choice.  Domestic producers who had no opportunity to express support for a petition resulting in a pre-enactment antidumping duty order are similarly disadvantaged and justifiably could

object to their lack of an opportunity to obtain distributions of duties assessed under that order.  In enacting the CDSOA, Congress could have avoided the retroactivity problem for both classes of disadvantaged producers by allowing them to qualify as ADPs by some other means, such as, for example, by recognizing post-enactment expressions of support for an antidumping duty order that existed at the time of enactment.  Of course, doing so would have enlarged the group of domestic producers who could benefit from the CDSOA reimbursement scheme.  Alternatively, Congress could have avoided the retroactivity problem by making the CDSOA entirely prospective, thus narrowing the group of beneficiaries.

In short, Congress could have chosen to dispense with any retroactive application of the petition support requirement, and it could have done so either by broadening or by narrowing the class of domestic producers that it chose to benefit in the CDSOA.  That Congress chose not to do so does not, in our view, make the CDSOA vulnerable to constitutional attack on due process grounds.  As the Supreme Court stated in Turner Elkhorn: "[i]t is by now well established that legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."  428 U.S. at 15.  In furthering a purpose of rewarding domestic producers who expressed support for petitions, including those who expressed support for petitions associated with pre-enactment orders, Congress acted neither arbitrarily nor irrationally. And as the Supreme Court instructed in Pension Benefit: "[p]rovided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by

rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." 467 U.S. at 729. We conclude, therefore, that Count 6 must be dismissed for failure to state a claim on which relief can be granted.

## IV. Conclusion

Count 1 must be dismissed because Plaintiff fails to state facts sufficient to qualify Plaintiff for distributions under the CDSOA. Plaintiff's First Amendment and equal protection claims are foreclosed by binding precedent, and Plaintiff's retroactivity claims must be dismissed for failure to state a claim on which relief can be granted. USI already has availed itself of the opportunity to amend its complaint and has not indicated that it desires to seek leave to amend its complaint further. Therefore, we conclude that it is appropriate to enter judgment dismissing this action.


                                                          /s/ Leo M. Gordon
                                                       Judge Leo M. Gordon


Dated: April 20, 2012
         New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED SYNTHETICS, INCORPORATED,<br><br>               Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA, UNITED STATES CUSTOMS AND BORDER PROTECTION, DAVID V. AGUILAR (ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION), UNITED STATES INTERNATIONAL TRADE COMMISSION, AND DEANNA T. OKUN (CHAIRMAN, UNITED STATES INTERNATIONAL TRADE COMMISSION),<br><br>               Defendants. | Before: Gregory W. Carman, Judge<br>           Timothy C. Stanceu, Judge<br>           Leo M. Gordon, Judge<br><br>Court No. 08-00139 |

**JUDGMENT**

Upon consideration of the First Amended Complaint, the motions to dismiss for failure to state a claim upon which relief can be granted filed by Defendants U.S. International Trade Commission, and the United States and U.S. Customs and Border Protection, all other papers and proceedings had in this action, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that Defendants' motions to dismiss are granted; it is further

**ORDERED** that Plaintiff's motion to complete the administrative record is denied as moot; and it is further

**ORDERED** that this action is dismissed.

                                                /s/ Leo M. Gordon
                                          Judge Leo M. Gordon

Dated: April 20, 2012
      New York, New York